Clerk
District Court

**DAVID G. BANES, Esq.**
**O'Connor Berman Dotts & Banes**
**Second Floor, Nauru Building**
P.O. Box 501969
**Saipan, MP 96950**
**Telephone No. (670) 234-5684**
**Facsimile No. (670) 234-5683**

AUG – 4 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**Attorneys for Plaintiff Elenita A. Santos and Angel Santos**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **ELENITA A. SANTOS and ANGEL SANTOS,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**HONGKONG ENTERTAINMENT (OVERSEAS) INVESTMENTS LIMITED dba TINIAN DYNASTY HOTEL & CASINO, and CENTURY INSURANCE CO. LIMITED,**<br><br>**Defendants.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**CIVIL CASE NO. 04-0030**

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Judge:  Tashima, Sr. Circuit Judge**
**Date:     August 11, 2005**
**Time:    8:00 a.m.**

Plaintiffs Elenita A. Santos and Angel Santos, by and through counsel, offer this Reply to Defendants' Opposition To Plaintiffs' Motion for Partial Summary Judgment.

**INTRODUCTION**

Plaintiffs have moved for partial summary judgment as to the issue of negligence *per se* on the part of Defendants. *See* Plaintiffs' Motion for Partial Summary Judgment filed with this Court on July 1, 2005.  This motion, along with its supporting memorandum and affidavits, demonstrates that:

1)  the Uniform Building Code governed the construction of the stairway in question

2)  the Uniform Building Code requires *all* stairways to have handrails

ORIGINAL

1

3)  the stairway in question *did not have a handrail*

4)  Mrs. Santos fell after *reaching for a handrail to steady herself*

Taken together, these facts raise a presumption of negligence under the theory of negligence *per se*.  Defendants, in opposing this motion, attempt to over-complicate the interpretation of the plain language of the Uniform Building Code ("UBC"), fail to set forth specific facts showing that there is a genuine issue for trial and mis-characterize the breadth of this Motion to support a claim that it is premature.


None of these arguments are sufficient to meet the burden placed upon Defendants by Rule 56 of the Federal Rules of Civil Procedure, and therefore, summary judgment as to the issue of liability should be granted to Plaintiffs.


## ARGUMENT


Defendants' entire opposition to the motion can be summed up by saying that they are attempting to avoid their responsibilities in this matter by laying them at the feet of others.  Nor have Defendants come close to meeting their burden of establish a material fact hat would require a trial on this particular issue.


## I  THIS MOTION IS RIPE FOR DECISION NOW AND THE MOTION SHOULD BE GRANTED


Defendants opposition to this Motion begins by attacking the timing of its presentation as premature.  They argue that "[e]ssential evidence has yet to be discovered" and provide the Declaration of Alfred Yue ("Mr. Yue") to support this proposition.  *See* Defendants Opposition at page 3.  Delay of the disposition of a motion for summary judgment under Rule 56(f) is not granted simply for the asking, as the rule:

. . . permits, but **does not mandate**, discovery before the granting of summary judgment. The district court should grant a continuance to permit discovery if it appears from the affidavits filed that the party opposing the summary judgment motion could not, for reasons stated, present facts essential to justify opposition. Fed.R.Civ.P. 56(f). **The burden is on the party seeking to continue the summary judgment motion to state facts sufficient to show that the evidence sought exists** (emphasis added) *Westwind Seafood Intern., Inc. v. Anchor Frozen Foods*, 972 F.2d 1348, 1992 (9th Cir. 1992).

In short, a grant of a 56(f) motion is only proper when:

    1) "the movant *diligently* pursued its previous discovery opportunities"

    2) *and* "the movant can show how allowing additional discovery would have precluded summary judgment."

*Qualls By and Through Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (C.A.9 1994)(emphasis added) (where despite the trial judge having never explicitly ruled on the pending 56(f) motion, the 9th Circuit upheld denial of additional discovery when *just one* of these two factors is absent).

Upon examination of Mr. Yue's Declaration, however, it becomes clear that neither of these requirements are not met. The additional discovery that will reveal "essential evidence" (as contended by Mr. Yue) can be broken into two categories. The first remains undiscovered due to the lack of diligence on the part of Defendants. The second consists of facts that are entirely irrelevant considering the limited scope of this Motion for Summary Judgment. Taken together, this means that none of the assertions in Mr. Yue's Declaration meet the standard of Rule 56(f). Therefore, Defendants should not be allowed to unnecessarily delay disposition of this Motion.

## A.    Defendants Failed To Diligently Pursue Discovery

Defendants attempt to blame Plaintiffs for their own lack of diligence in deposing witnesses. But it is not Plaintiffs burden to be deposed by Defendants, they have no valid excuse

1   for not deposing Plaintiffs and perhaps most significantly, both Plaintiffs appeared for their

2   depositions but Defendants chose not to proceed.

3

4       The first of the additional discovery demanded in Mr. Yue's Declaration is "the

5   deposition of Plaintiff . . . [in order to] evaluate her testimony in light of expert opinion about the

6   proximate cause of her fall." *See* Defendants' Opposition at para. 6.  However, Defendants

7   should not be able to delay disposition of this Motion because as they __ months to take her

8   deposition but more significantly, Mrs. Santos showed up for her scheduled deposition and

9   Defendants decided not to proceed.

10

11      Generally, one factor that may preclude a Rule 56(f) delay is present when the moving

12  party has squandered prior discovery opportunities.  The Ninth Circuit in *Chance v. Pac-Tel*

13  *Teletrac Inc.* upheld the denial of additional discovery prior to disposition of a motion for

14  summary judgment, in part, because of the movant's failure to take depositions in a timely

15  manner.  242 F.3d 1151, 1161 (2001).  There the movant was aware of the identities of the

16  witnesses seven months prior to entry of summary judgment.  *Id.*  Additionally, the court found

17  that the movant in *Chance* made "no argument why it could not have taken the [depositions]

18  within that period."  *Id.*  This willing and unexplained failure to depose known witnesses

19  factored heavily into the court's decision to deny additional discovery.  *Id.*

20

21      Here, Defendants have not been diligent as they have had almost nine months to depose

22  Mrs. Santos, the discovery deadline has been extended twice, Mrs. Santos has always been

23  available - - but they have simply chosen not to depose her.  That is their fault, not hers.

24

25

26

27

28

4

### 1. Mrs. Santos Flew To Saipan For Her Deposition And Defendants Declined to Proceed.

Similarly, Defendants have chosen not to depose Mrs. Santos despite being given ample opportunity to do so. The identity of Mrs. Santos has been known to Defendants for the entire pendancy of this matter, yet despite the efforts of Plaintiffs' counsel, Defendants have elected to delay her deposition with no explanation. Moreover, above and beyond what constituted a lack of diligence in pursuing discovery in *Chance*, Mrs. Santos was scheduled to be deposed, but ***Defendants elected to cancel the deposition of their own accord.*** On July 23, 2005 more than eighteen (18) days before the hearing of this motion, Mrs. Santos, an elderly and infirm woman, traveled from Guam to Saipan for a medical appointment and her deposition. All parties were represented. Mrs. Santos was sworn in. Mr. Santos, also a Plaintiff, was present and was also willing to be deposed. The tape recorder was started. And yet, Defendants chose not to depose her.[1] Defendants now complain that her deposition would reveal indispensable information that they need to defend against this Motion for Summary Judgment. To allow them to have their cake and eat it too would offend both the technical requirements and spirit of Rule 56(f).

### 2. Mrs. Santos Deposition Is Not Even Necessary To Oppose This Motion.

Additionally, any such information that Mrs. Santos may or may not reveal in her deposition fails the second criteria as it ***has nothing to do with whether or not Defendants violated Commonwealth law.*** This assertion by Mr. Yue does not illustrate any potentially discoverable fact that would bear upon the question of a statutory violation by Defendants in their failure to install handrails. This specific declaration (number 6) raises the issue regarding the proximate cause of Mrs. Santos' fall. As is discussed in more detail below, the issue of whether or not Defendants were in violation of the UBC is an entirely separate, legal question

---

[1] To be fair, the parties chose to begin by discussing settlement. After those discussions which lasted about 1 hour, Defendants made the suggestion to continue the depositions and Plaintiffs' agreed. Plaintiffs agreed in part as it was represented to them they would have a response to their settlement offer by August 1st (thus potentially making this Reply unnecessary). However, no such response has yet been conveyed.

from the proximate cause of Mrs. Santos' fall. Defendants were, and very well still may be, in violation of the UBC by not having handrails installed, regardless of any alleged dispute surrounding the proximate cause of Mrs. Santos' fall.

Therefore, this particular portion of Mr. Yue's Declaration fails both tests established by the Ninth Circuit and should not support a grant of a Rule 56(f) delay.

.

**B.    All Other "Essential Evidence" Exceeds The Scope Of This Motion And Is Therefore Irrelevant**

The remaining "factual" basis that Defendants rely upon to delay this Motion exceed the scope of the Motion and therefore are entirely irrelevant in determining if a Rule 56(f) delay should be granted. Again, Defendants are shifting their burden under 56(f) upon both Plaintiffs and this Court by overreaching the bounds set by this Motion.

**1.    Defendants Have Failed To Meet Their Burden That Additional Facts Are Necessary**

The moving party who requests such a delay must identify additional facts that could be discovered that might defeat the pending summary judgment motion. *See Qualls by and through Qualls,* 22 F.3d 839, 844 (9th Cir. 1994). This decision, while involving preemption of insurance rights under ERISA, is illustrative of this second hurdle to Rule 56(f). There, additional discovery was denied because "[c]ritically, the information sought by [the movants] attorney would not have shed light on any of the issues upon which the summary judgment motion was based" and "[t]herefore, the additional discovery would not have precluded summary judgment and *was properly denied* (emphasis added)." *Id.* Such assertions of fact must show that "the evidence sought exists" and is not "the object of pure speculation." *Terrell v. R.D. Brewer,* 935

F.2d 1015, 1018 (9th Cir. 1991). Simply put, if the specified facts sought by Defendants would not be dispositive of this particular motion, they have no place in our Rule 56(f) analysis.

### 2. Expert Opinions Are Not Necessary

First, Mr. Yue complains that experts have not been designated by either party, and therefore, there has been no opportunity to depose any such experts. Expert testimony, as explained below, is entirely irrelevant considering the limited scope of this Motion for Summary Judgment. Paragraphs 2, 3, 4, and 8 of this Declaration generally bemoan the fact that expert witnesses have not been fully disclosed and suggest that this has something to do with the instant motion.[2] *See* Mr. Yue's Declaration.

### 3. Plaintiffs' Are Not Seeking Summary Judgment As To Damages

To substantiate this insinuation, Defendants include paragraphs 5 and 7 to identify what facts exist to be discovered that will bear upon this motion and meet the standard illustrated in *Terrell.* 935 F.2d 1018. Paragraph 5 asserts that the deposition of Dr. Pamela Hofer, one of Mrs. Santos' treating physicians, is necessary to test the validity of the claims for mental distress injuries. Also, Defendants complain that they will need to retain an expert to judge the accuracy of Dr. Hofer's diagnosis. This all may be true, but ***has nothing to do with this Motion.*** This motion is entirely concerned with liability, its scope is quite limited and does not purport to be dispositive of any issues regarding amount, character and apportionment of damages. Furthermore, paragraph 7 of the Declaration speaks about a retained expert that will testify as to how the damages in this case should be apportioned. Again, these facts would certainly raise a question of material fact ***if damages were the subject of this motion.*** At the risk of sounding repetitive, this motion does not, in any way, shape or form, have anything to do with damage

---

[2] In any case, Defendants have been well aware for months now that Dr. Firestone is Plaintiffs' expert and he will testify that the stairway was in violation of the UBC and is unsafe. Defendants have also been aware, for months now, that Dr. Hofer will testify as to Mrs. Santos' pain and suffering.

apportionment.    It strictly concerns the liability of Defendants because of their statutory violation.

Since this is properly titled a Motion for *Partial* Summary Judgment, none of these "essential facts" would be dispositive in this instance and therefore, and Defendants should not be able to escape their responsibilities by delaying the disposition of this motion.

## II    NO GENUINE ISSUE AS TO PROXIMATE CAUSE EXISTS

Next, Defendants assert as a broad proposition that the issue of proximate cause must always be left to the jury.  This is not accurate statement as to Commonwealth law.

Contrary to Defendants' position, the issue of proximate cause may be disposed of upon summary judgment, Plaintiffs have met their burden to establish that no genuine issue of material fact exists and Defendants offer no specific facts contrary to this finding.  Therefore, Rule 56 demands that summary judgment be granted in favor of Plaintiffs.

### A. Proximate Cause Can Be Disposed Of With Summary Judgment

Section III of Defendants opposition memorandum attempts to persuade this Court that Plaintiffs have not met Rule 56's standard for summary judgment.  *See* Opposition Memorandum at 4.  Defendants first attack the sufficiency of Plaintiffs' motion for summary judgment by blithely suggesting that summary judgment as to the issue of proximate cause is so firmly an issue to be tried by the jury that it should automatically be denied in this instance.

While Plaintiffs agree that summary judgment is *typically* a question preserved for consideration by the finder of fact, ***it is not the legal certainty that Defendants claim it to be.*** The strong statement that "[t]he ultimate determination of whether a particular negligent act

is the proximate cause of a resulting injury is a question of fact for the jury" is raised almost

talismanically to eliminate any possibility of granting summary judgment as to negligence

*per se.  See* Defendants' Opposition Memorandum at 4 quoting *Doggett v. United States,* 875

F.2d 684, 692 (9th Cir. 1989) (where the question of a proximate link between a security

guard allowing an intoxicated driver past a checkpoint and a subsequent accident was left to

the jury).  While this statement may be correct in many situations, *it is not an absolute* and to

treat it as such would ignore the law of the Commonwealth.


The Commonwealth has adopted as its law the RESTATEMENT SECOND OF TORTS.  7 CMC

§ 3401.  The RESTATEMENT, in turn, recognizes that:

> The question of what actually occurred in any particular case is for the jury,
> unless this is agreed upon, admitted by the pleadings, or found by special verdict,
> or *unless the testimony is so undisputed and uncontradictory that there is only
> one inference which reasonable men could draw from it. If this is the case, the
> court must determine whether the actor's conduct is a substantial factor in
> bringing about the plaintiff's harm,* unless this question is itself open to
> reasonable difference of opinion, in which case it is for the jury (emphasis
> added).

*Id.* at § 434, Comment C.  Plaintiffs must then illustrate, through the presentation of specific

facts that the only inference that reasonable persons could draw is that Mrs. Santos fell because

she was unable to grab on to a handrail, and that was a "substantial factor" in her fall.


Plaintiffs have done so.


**B.  Plaintiffs Have Established A Proximate Cause - - And The Burden Shifts To
Defendants, Which They Fail To Meet**

Plaintiffs, through the affidavit testimony of Mrs. Santos, have established that:

1)  she "began to lose [her] footing"

2)  she "reached for a handrail"

3)  "there was no handrail"

1    4) "and as a consequence, [she] fell and broke [her] leg"

2  Declaration of Elenita A. Santos 1-2, previously filed with this Court. This testimony, in and of

3  itself, establishes that the lack of a handrail was a "substantial factor" in Mrs. Santos' fall.

4  Therefore, only if Defendants can demonstrate that "the question [of] whether the [Defendants']

5  conduct was a substantial factor in bringing about [Mrs. Santos'] harm is open to reasonable

6  difference of opinion" would "summary judgment [be] improper." *Vickers v. U.S.,* 228 F.3d

7  944, 953-954 (9th Cir. 2000) (applying the "substantial factor" test of § 434).

8

9    They have not done so.

10    **1. Defendants Have Not Meaningfully Responded To This Motion And So
         Fail To Meet Their Burden**

11

12    To establish this "reasonable difference of opinion" Rule 56 requires that Defendants

13  come forward with established facts, not conjecture:

14      When a motion for summary judgment is made and supported as provided in this
        rule, an adverse party *may not rest upon the mere allegations or denials of the*
15      *adverse party's pleading*, but the adverse party's response, by affidavits or as
        otherwise provided in this rule, *must set forth specific facts showing that there is*
16      *a genuine issue for trial* (emphasis added).

17  Fed. R. Civ. P. 56(e).  The Defendants cannot overcome this burden without "offering any

18  concrete evidence from which a reasonable juror could return a verdict in [their] favor and by

19  *merely asserting that the jury might, and legally could, disbelieve [Mrs. Santos' testimony]*",

20  and even though "[t]he movant has the burden of showing that there is no genuine issue of fact . .

21  . the [Defendants' are] not thereby relieved of [their] own burden of *producing in turn evidence*

22  *that would support a jury verdict* (emphasis added)." *Anderson v. Liberty Lobby, Inc.* 477 U.S.

23  242, 256, (1986) (while factually distinct from this case, *Anderson* is the wellspring from which

24  the majority of summary judgment jurisprudence flows)

25

26

27

28

## 2. Defendants Have Not Established Any Facts To Prevent Summary Judgment

Here, Defendants resist this Motion simply by attacking the sufficiency of Mrs. Santos' testimony without offering *any concrete* facts that would require the Court to deny Plaintiffs' Motion. By failing to do so, they fail to meet their burden and summary judgment is therefore appropriate.

### a. Hypotheticals And Conjecture Are Not Enough

Defendants ask several purely hypothetical questions regarding the cause of Mrs. Santos' fall, what care she was exercising, the condition of her shoes and if she would have fallen even if there was a handrail. Defendants' Opposition at 5. Notably, none of these concerns are accompanied by *any concrete facts* established by any sort of testimony. Predictably, Defendants will complain that they have not been able to depose Mrs. Santos, but, as demonstrated above, this is their own fault. They are, simply, vague hypotheticals that cannot, by definition, meet Rule 56's standard.[3]

If this approach were to be followed, either party could make whatever assertions they wanted and the concept of summary judgment would be emasculated. For example, Defendants could posit that Mrs. Santos fell down the stairs after consuming massive quantities of alcohol and hallucinogenic drugs, but *without any supporting facts this clearly would not defeat summary judgment*. On the other hand, under this approach, Plaintiffs could claim that an employee of the hotel picked her up and threw her bodily down the stairs. Again, *there are no facts offerable* to support such an assertion and it would not be disposable on summary judgment. To allow such rampant conjecture would entirely defeat the savings of time, money and effort that summary judgment provides.

---

[3] Nor can Defendants assert any concrete facts as the only witness to her fall is Mrs. Santos. In fact, she was forced to be on the ground pleading for help for 5-10 minutes.

### 3.  Defendants Fail To Establish Mrs. Santos' Knowledge

Additionally, Defendants try to raise a factual question regarding Mrs. Santos' awareness of the lack of a handrail.  They rely upon the *Van DeVeer* decision ( *Van DeVeer v. RTJ, Inc.,* 101 S.W.3d 881 (2003)) to establish the standard by which RESTATEMENT SECOND OF TORTS § 343A is to be applied (ironically, the lack of a handrail in *Van De Veer* was not the hazard upon which liability was finally established and therefore knowledge of it was irrelevant).  Defendants Opposition at 6.  *Van DeVeer* involved a question of fact as to whether or not an injured person knew about a hazard or that the hazard was obvious.  *Id.*  Defendants offer no specific factual basis for the assertion that Mrs. Santos knew about the lack of the handrail, or that such a lack of a safety device would be obvious to a person in her position.  Without such support, they cannot rely upon § 343A.

### a.  Mrs. Santos Appeared Already For Her Deposition

Nor can they complain about needing to depose Mrs. Santos.  Whatever credibility such an argument had flew out the window when Mrs. Santos flew here and physically appeared and was sworn in to begin her deposition.  Defendants elected not to proceed.  Plaintiffs hope that this was not a tactical decision made with the hope of delaying the trial.  Either way, Defendants should not be allowed to use is excuse.

### 4.  But Even If She Knew, Defendants Are Still Liable

Even assuming *arguendo* that Mrs. Santos descended the stairway with full appreciation of the danger it posed (a position that Plaintiffs do not concede) Defendants quote, yet immediately disregard, an exception which swallows up their entire argument.  The rule of non-liability under §343A is generally applied ***"unless the possessor should anticipate the harm despite such knowledge or obviousness."*** *Id.* (emphasis added) The stairway in question was a main access point to the pool area of the Tinian Dynasty Hotel.  Being one of the more popular features of any tourist attraction, the pool area is a place that Defendants would not only expect,

but greatly desire as many persons as possible to travel to. No finder of fact could reasonably

that Defendants should not have anticipated someone losing their footing on this particular

stairway at some point in time, because Defendants have done ***everything in their power to***

***ensure that as many people as possible visit their hotel.***

### 5.     Defendants' Offer Only Unsupported Conjecture Which Fails To Meet Their Required Burden

Defendants' assertions could, with the proper assertion of specific facts, defeat a motion

for summary judgment. However, since they have relied upon nothing more than vague

suggestion that some such facts may exist somewhere, they have not satisfied Rule 56, and

should not be able to overcome this Motion for Summary Judgment. Defendants "cannot defeat

summary judgment with allegations in the complaint, or with ***unsupported conjecture or***

***conclusory statements*** (emphasis added)." *Hernandez v. Spacelabs Medical Inc.,* 343 F.3d 1107,

1112 (9th Cir. 2003) (granting summary judgment when the non-movant "proffered conclusory

allegations, unsupported by facts").

## III     PLAINTIFFS' DO NOT NEED TO PRESENT "DIRECT EVIDENCE OF A BUILDING CODE VIOLATION"

In their most blatant attempt to force Plaintiffs and this Court to shoulder Defendants'

burden, Defendants state that "[p]laintiffs do not offer this court [sic] evidence in the form of

affidavit or otherwise that defendant Tinian Dynasty violated the Building Code." *See*

Defendants' Opposition at page 6. Furthermore, they state that "Dr. Firestone's declaration

merely recites his measurements of the stairs and states that the stairs were without handrails."

*Id.* Defendants apparently believe that Plaintiffs must offer some direct testimony that the UBC

has been violated. They mistakenly assume that this is what Dr. Firestone's testimony intends to

do. However, this affidavit is not intended, nor could it, make any legal conclusions, but rather

1  is provided to establish the factual basis which illustrates indisputably that a statutory violation
2  has occurred.[4]

3

4  **A. The UBC, As Applied Here, Is Quite Simple To Interpret And Needs Not Expert**
    **Testimony**
5

6  The interpretation of a statute is strictly a question of law and in this instance, a simple
7  one. Since the UBC has been adopted as the Commonwealth's law, it should be interpreted in
8  the same fashion as any other legislative enactment. In the Commonwealth "A basic canon [of
9  statutory interpretation] is that statutory language must be given its plain meaning." *Nansay*
10 *Micronesia Corp. v. Govendo*, 3 N.M.I. 12 (1992). Section 3306(i) of the Uniform Building
11 Code states that *"[s]tairways shall have handrails on each side."* Here, the statute in question is
12 clear and entirely unambiguous. It describes a physical situation common to everyday life and
13 does not use technical jargon or complex language. To assert that the statute's requirements are
14 not easily interpreted by this Court *as a matter of law* strains credulity and insults the
15 intelligence of all parties involved.

16

17 By way of example, consider the ubiquitous application of negligence *per se,* that of a
18 car accident that results when a driver is exceeding the speed limit. As in every negligence *per*
19 *se* claim, the threshold issue is the determination that a statutory violation exists. If a valid
20 statute says exceeding posted limits is illegal and the defendant admits to exceeding the posted
21 speed limit, a statutory violation is proven. No expert testimony would be necessary to "prove"
22 the defendant violated the statute. The only entity that has to say "these set of facts constitute a
23 statutory violation" is this Court, and when these salient facts are uncontroverted this Court
24 should indeed do so.

25

26

27 [4] Even though such an assertion by Dr. Firestone is entirely unnecessary, Plaintiffs have secured another declaration
    by Dr. Firestone which offers his opinion that the stairway in question is a clear violation of the UBC. A copy of
28 this declaration is attached as "Exhibit A."

14
3087-01-050804-PL-ReplyMSJ-glh

The proven statutory violation in this case is no more complicated than our hypothetical case and should not be made so merely because Defendants desire some other result and do not want (or are unable to) present sufficient evidence to have a different result.

**B.    Defendants Admit To A Statutory Violation**

Defendants continue by stating that Plaintiffs' Motion requests that this Court "infer that there was a building code violation" and warn that "inferences must be drawn in favor of the non-moving party." *Id.* This admonition is absolutely correct, but applies to *factual* inferences and not questions of law. All of the *facts* taken in the light most favorable to Defendants lead to the inescapable conclusion that the Uniform Building Code has been violated *as a matter of law*. There are simply no factual inferences to be made with regard to the question of statutory interpretation. The entire factual predicate for a violation of the UBC has been admitted to.

In the "Introduction" section of Defendants' opposition memorandum, they admit that *"the stairway had no handrails."* *See* Defendants' opposition at 2 (emphasis added). Defendant's also have never claimed, nor could they in good faith, that the Uniform Building Code did not govern the construction of the stairway in question. Finally, Defendants have never, and again could not in good faith, deny that the stairway in question is a "stairway" by definition of the Uniform Building Code. Once the factual predicate for the statutory violation has been established, no further factual testimony (by affidavit or otherwise by expert witness or lay person) is necessary. Here the requirements of the statute are beyond argument and the facts which show that these requirements have not been met have been admitted to by Defendants. Therefore, no further testimony is needed for this Court to determine that *Defendants violated the law of the Commonwealth, as a matter of law.*

### C.   Defendants' Excuses Are Entirely Irrelevant To This Question

In an effort to show how much of a genuine issue as to material facts exists, Defendants offer four specific factual assertions.  However, none of these assertions has any relevance whatsoever to the question of whether or not they have violated the UBC.  First, through Mr. Yue's declaration, Defendants assert that on one hand, no citation has been issued for a UBC violation and on the other, that they have been issued a valid certificate of occupancy. Defendants opposition at 7.  Defendants seem to be attempting, through insinuation, *to blame the Commonwealth's building inspectors for the lack of a handrail.*

### 1.   The Alleged Failure of Building Inspectors Is Legally Irrelevant

2 CMC § 7122 defines the powers and responsibilities of the Building Safety Official to include the conduct of safety inspections and the issuance of various certificates of compliance. This section, therefore, governs the issuance of the type of certificate that Defendants are offering to shield them from liability.  However, § 7122 anticipates such a defense and states that:

> This code shall not be construed *to relieve from or lessen the responsibility of any person owning, operating, or controlling any building or structure for any damages to persons* or property caused by defects, *nor shall the Building Safety Division or the Commonwealth government be held as assuming any such liability by reason of* the permit or inspection authorized by this code or *any certificate of inspection issued under this code* (emphasis added).

2 CMC § 7122.  Defendants, therefore, cannot hide behind any safety inspection that has been conducted or any certificate of occupancy that has been issued.  Furthermore, they cannot shift responsibility for their own negligence to the Commonwealth or its officers.  Prior inspections and issued certificates simply *have no bearing upon the question of their liability.*

Neither is this view unique to the Commonwealth.  Elsewhere, the failure of building inspectors to notice that a violation of the UBC existed does not absolve the property owner from responsibility for it.  In fact:

the actions or inactions of a building inspector should not determine whether the Building Code has been violated. The failure of an inspector to find a violation, whether by mistake, oversight, or lack of resources, ***should not be used as proof that such a violation did not exist*** (emphasis added).

*O'Neil v. Windshire Copeland Associates, L.P.,* 197 F.Supp.2d 507, 510 (E.D. Va. 2002) (where negligence *per se* was found despite previous inspections and clearances by building inspectors). Just as here, the *O'Neil* Court was presented with evidence by defendants who disputed the existence of a violation of an applicable building code because the handrail in question had been inspected six months prior to the accident and cleared for any building code violations. *Id.*

### 2. Lack Of Notice Does Not Absolve Defendants From Liability

Additionally, Defendants state that they have safety procedures in place and are unaware of any other injuries involving these stairs. They do not explain, however, how any of this has any relevance to the question of whether or not Defendants have violated the requirements of the UBC. Merely touting what lengths Defendants have gone to in ensuring the safety of their patrons does not excuse them from complying with the statues of the Commonwealth. If the application of the UBC as the standard of care in this instance was disputed (an argument that the Defendants have not raised and could not in good faith raise in the future), such facts might be relevant. However, as outlined in Plaintiffs memorandum in support of this motion, the application of the UBC's strictures is mandatory. ***Extra-statutory measures have nothing to do with this question***. Without further explanation, these alleged facts do not bear upon the issue of the presence or absence of a statutory violation.

### 3. It Is Defendants' Burden To Establish An Excuse For Non-Compliance

Finally, Defendants resist this motion by arguing that Plaintiffs have not demonstrated that the violation was not "excused." Defendants' Opposition at 7. Here is where Defendants' campaign of blame-shifting comes to a head. They actually suggest that Plaintiffs should have to prove an affirmative defense of Defendants, ***by proving a negative.*** Questions of

impossibility aside, this is not the place of Plaintiffs as the burden for proving defenses always rests with the party asserting them.

The Ninth Circuit illustrated this basic principle by holding that:

upon such a prima facie showing of negligence per se, *the burden of proof shifted to the [defendant] to explain that the [statutorily proscribed behavior] was justifiable or excusable* under the circumstances (emphasis added).

*Cole v. Layrite Products Co.,* 439 F.2d 958, 960 (9th Cir. 1971).  Simply put, *it is the job of the Defendants and not Plaintiffs to "excuse" their statutory violations.*  Instead of legitimately shouldering this burden and offering some excuse as to why there is no handrail on this stairway, Defendants attempt to foist this responsibility upon Plaintiffs.

It is not the burden of Plaintiff to "excuse" Defendants' behavior and to ask them to do so would constitute reversible error.


## CONCLUSION

Defendants attempt to shift responsibility to Plaintiffs and this Court in resisting this Motion for summary judgment.  Through confusion of the issues, baseless conjecture and over-complication of simple statutory requirements, Defendants claim that summary judgment is improper.  Having offered such an insufficient showing, however, they have demonstrated that no genuine issue of material fact exists and Plaintiffs are therefore due a judgment as a matter of law.

Dated: August 4, 2005

Respectfully submitted,

O'CONNOR BERMAN DOTTS & BANES
Attorney for Plaintiffs Elenita A. Santos and
Angel Santos

By: _____
        DAVID G. BANES

1 | **DAVID G. BANES, Esq.**
**O'Connor Berman Dotts & Banes**
2 | **Second Floor, Nauru Building**
**P.O. Box 501969**
3 | **Saipan, MP 96950**
**Telephone No. (670) 234-5684**
4 | **Facsimile No. (670) 234-5683**

5 | **Attorneys for Plaintiff Elenita A. Santos**

6

7 | **IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

8

9 | **ELENITA A. SANTOS,**                              )    **CIVIL CASE NO. 04-0030**
                                                        )
10 |              **Plaintiff,**                         )
                                                        )    **DECLARATION OF MARC**
11 |       **vs.**                                       )    **FIRESTONE IN SUPPORT OF**
                                                        )    **MOTION FOR SUMMARY**
12 |                                                     )    **JUDGMENT**
                                                        )
13 | **HONGKONG ENTERTAINMENT**                          )
**(OVERSEAS) INVESTMENTS LIMITED**                       )    **Judge: Tashima, Sr. Circuit Judge**
14 | **dba TINIAN DYNASTY HOTEL &**                      )    **Date: August 11, 2005**
**CASINO, and CENTURY INSURANCE**                        )    **Time: 8:00 a.m.**
15 | **CO. LIMITED,**                                    )
                                                        )
16 |              **Defendants.**                        )
                                                        )
17 |

18

19 |       I, Marc Firestone, declare under the penalty of perjury that the following is true and

20 | based upon my personal knowledge, except where noted otherwise, and if called to testify, I

21 | could do so competently:

22

23 |       1.     On March 3, 2005, I visited the Tinian Dynasty and Casino to inspect the

24 | stairway where Mrs. Elenita Santos slipped and fell.

25

26 |       2.     I measured the steps in question and they exceeded 88 inches in width.

27

28 |       3.     There were no handrails on either end of the stairway.

1      4.      Additionally, there were no intermediate handrails at any point along the width of

2 the stairway.

3

4      5.      This condition constituted a violation of Section 3306(i) of the Uniform Building

5 Code.

6

7      6.      Additionally, this condition rendered the stairway unreasonably dangerous for its

8 normal and intended use by patrons of the hotel.

9

10

11      Dated this ___ of _____, 2005.

12

13

14

15      *ORIGINAL TO FOLLOW*
                              _____
16                              Marc Firestone

17

18 United States of America        )
                                   ) s.s.
19 California ...........................)

20

21      On this _____ day of _____, 2005, before me, a Notary Public in and for the

22 United States of America personally appeared Marc Firestone, known to me to be the same
   person whose name is subscribed to the foregoing instrument and acknowledged to me that he
23 had executed the same as the result of his free will and it was a voluntary act and deed for the
   uses and purposes therein set forth.

24

25      IN WITNESS WHEREOF, I have hereunto set my hands and affixed my official seal the
   day and year last written above.

26

27

28                                    _____
                                       NOTARY PUBLIC

2
DRAFT NEW FIRESTONE DEC