F I L E D
Clerk
District Court

AUG 3 1 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Colin M. Thompson, Esq.
Law Offices of Colin M. Thompson
J.E. Tenorio Building
PMB 917 Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile:  (670) 233-0776

*Attorney for Century Insurance Company Ltd. and
Hongkong Entertainment Investment Ltd.*

IN THE DISTRICT COURT

FOR THE

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ELENITA S. SANTOS and ANGEL SANTOS,<br><br>  Plaintiffs,<br><br>vs.<br><br>HONGKONG ENTERTAINMENT (OVERSEAS) INVESTMENT LTD .dba, TINIAN DYNASTY HOTEL & CASINO and CENTURY INSURANCE CO., LTD.<br><br>  Defendants. | Civil Action No. 04-0030<br><br>DECLARATION OF COUNSEL IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Date : September 1, 2005<br>Time : 9:00 a.m.<br>Judge: Hon. Alex R. Munson |

I, Colin M. Thompson, do declare that:

1.   I am the attorney of record for Defendant, Century Insurance Co., Ltd and Hongkong Entertainment Investment Ltd. in this case. I make this declaration based on my personal knowledge and I am competent to testify as to the matters set forth.

2.   Attached to this declaration as Exhibit *"A"* is a true and correct copy of Dr. Marc A. Firestone's Report. Dr. Firestone is Plaintiffs' retained Expert.

3.   Dr. Firestone concludes that "the subject staircase was not in compliance with the safety requirements of the Uniform Building Code. This neglect was a probable factor in the injuries Mr. Santos suffered". Report at Pg. 2.

4. Attached to this declaration as Exhibit *"B"* is a true and correct copy of Benchmark Medical Consultant by and through John L. Chase, M.D.., F.A.C.S. Dr. Chase is another Plaintiffs' retained Expert.

5  Attached to this declaration as Exhibit *"C"* is a true and correct copy of medical report of Dr. Thomas Austin, M. D., FRCS (C). Dr. Austin was Mrs. Santos' treating orthopaedic surgeon.

I declare by penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated this 31st day of August, 2005.

_____
COLIN M. THOMPSON, ESQ
Attorney for Century Insurance Co., Ltd.
and Hongkong Entertainment Investment Ltd.

# REPORT OF MARC A. FIRESTONE, PH.D.

# IN THE MATTER OF

# SANTOS V TINIAN DYNASTY

1. **Qualifications**
   1.1. Education
      1.1.1. I am a trained physicist with B.S., M.S., and Ph.D. degrees in physics from The University of Michigan.
      1.1.2. I completed over 1000 hours of in-house training in forensic engineering at von Haenel and Associate, Inc.

   1.2. Work Experience
      1.2.1. I spent over 20 years as a research physicist/engineer doing contract work for agencies of the federal government including NASA, the Department of Energy, and the Department of Defense. During this time period I worked for two universities and several private contract research companies. My professional responsibilities were in the general areas of satellite dynamics and control, controlled thermonuclear fusion reactors, and nuclear weapons phenomenology and effects. I have published over 30 scientific papers and reports in these areas and given numerous presentations at scientific conferences and workshops.
      1.2.2. Since 1995 I have been employed full time as a forensic engineer. My cases cover a wide spectrum of technical issues that utilize my training and experience in the physical sciences and mathematics. These include slip/trip and fall, vehicular accidents, product defects, fire and explosion analysis, radiation effects, and bullet trajectory analysis. My clients include insurance companies, civil defense and plaintiff attorneys, and criminal defense attorneys and prosecutors. I have worked for numerous city, county, and state governmental agencies. I have presented a lecture series on vehicular accident reconstruction for M.C.L.E credit and given other lectures to attorney groups.

2. **Summary of the Case**
   On 30 January 2004, Ms. Elenita Santos was walking down an outdoor staircase leading to the pool at the Tinian Dynasty Hotel when she fell and injured herself near the bottom of the staircase.

3. **Areas of Investigation**
   I have been retained by the attorneys for the plaintiff, Elenita Santos, to analyze her fall and subsequent injuries.

4. **Opinions**

Exh. "A"    1

There were no handrails on either side of the staircase or at intermediate locations along its width. Thus, when Ms. Santos began to fall there was no means for her to regain her balance and either prevent the fall or mitigate its severity. The staircase width was measured to be 206.5 inches. The Uniform Building Code in section 1003.3.3.6 requires handrails on each side of a staircase and intermediate handrails every 88 inches along its width. These handrails must be between 34 and 38 inches above the landings and the nosing of the treads. The staircase at the Tinian Dynasty only had 16 inch high cement walls along the sides. Thus, the subject staircase was not in compliance with the safety requirements of the Uniform Building Code. This neglect was a probable factor in the injuries Ms. Santos suffered.

5. **Materials Reviewed**
   Commonwealth Health Center Emergency Visit Record dated 1/30/04 at 1810 hours.

6. **Inspections**
   - The subject staircase at the Tinian Dynasty Hotel on 3/3/04.
   - Interview of Ms. Santos on 2/28/04 in the hospital.

7. **Compensation**
   I have been engaged by the plaintiff's attorneys, O'Connor, Berman, Dotts & Banes, as a member of von Haenel & Associates, Inc. The rate charged for my services is $250.00 per hour for all aspects of the case done at my office. Travel to Saipan and inspection and analyses was covered under a fixed price arrangement.

8. **Exhibits**
   8.1. Publications authored by Marc A. Firestone within the past 10 years
   8.2. Trial testimony of Marc A. Firestone within the past 4 years
   8.3. Deposition testimony of Marc A. Firestone within the past 4 years
   8.4. Curriculum Vitae of Marc A. Firestone, Ph.D.

Marc A. Firestone, Ph.D.          12 August 2005

2

# PUBLICATIONS OF MARC A. FIRESTONE SINCE 1993

"Science and the Law – A Personal Perspective," **Citations,** Ventura County Bar Association, November 1998.

"Science and the Law – A Personal Perspective II," **Citations,** Ventura County Bar Association, January 1999.

"Science and the Law – A Personal Perspective III," **Citations,** Ventura County Bar Association, July 1999.

"Science and the Law – A Personal Perspective IV," **Citations,** Ventura County Bar Association, February 2000.

"Developing Integrated Tokamak Dynamics Models for the Next-Generation Machine Control," **Fusion Technology,** 32 (1997) 526.

"Comprehensive Feedback Control of a Tokamak Fusion Reactor," **Fusion Technology,** 32 (1997) 390.

"Integrated, Model Based Feedback Control in Fusion Reactors," **15th IEEE Symposium on Fusion Engineering,** Hyannis (1993)

"Use of Tokamak Dynamics Models for Digital Filtering and Control," **15th IEEE Symposium on Fusion Engineering,** Hyannis (1993)

"Plasma Response Modeling for Multivariable Tokamak Control Design," **15th IEEE Symposium on Fusion Engineering,** Hyannis (1993)

"Comprehensive Control of a Tokamak Fusion Reactor Utilizing Optimal Control Theory – Phase II SBIR Final Report," **MRC-R-1445,** Mission Research Corporation, Santa Barbara, CA, July 1993.

DEPOSITION TESTIMONY OF MARC A. FIRESTONE SINCE 1998

- Misa v State of California    1/98    testified for the defendant
- Rothbart v Century Medical Plaza    4/27/98    testified for the defendant
- Richman v City of Los Angeles    5/26/98    testified for the defendant
- Saldivar v Brinks    3/13/99    testified for the defendant
- Medina v Valdivia & County of Ventura    4/7/99    testified for the plaintiff
- Alverez v Hudson-General    5/25/01    testified for the plaintiff
- Dalton v Parada Construction    5/26/99    testified for the defendant
- Ashton v Sutton Trust    8/17/99    testified for the defendant
- Garcia v Bennett    8/20/99    testified for the defendant
- Raye Del Gato v State of California    10/12/99    testified for the defendant
- Castro v State of California    8/8/00    testified for the defendant
- Kaur v Ramirez, Unilab Corp., et al    9/00    testified for the plaintiff
- Alverez v Hudson-General    5/25/01    testified for the plaintiff
- Geier v Scandia Apartments    7/20/01    testified for the plaintiff
- Cignal v Roberson    8/01    testified for the defendant
- Neel v Channel Harbor Foundation    2/14/02    testified for the plaintiff
- Lustig v University Podiatry Group    5/02    testified for the defendant
- Young v Vista Meadows HOA    5/02    testified for the defendant
- Lee v Stazzoni, Villia Rose    10/02    testified for the defendant
- Lustig v University Podiatry Group    3/19/03    testified for the defendant
- Nettles v California Inn    4/10/03    testified for the defendant
- Huertero v Wersching, Huntington Beach Police Department.    4/11/03    testified for the plaintiff
- NATLSCO v Qualex, Inc.    9/15/03    testified for the defendant
- Lopez v State & A Partners    10/13/03    testified for the defendant
- Mogadam v Sherwood Development 11/14/03    testified for the plaintiff
- Valiente v Circle Inn Motel    3/17/04    testified for the defendant
- Graham v Pouliot, et al.    3/23/04    testified for the plaintiff
- Hector Roman Castillo v United States of America, et al.    7/20/04    testified for the plaintiff
- Hillman v Conejo Wholesale Auto    11/30/04    testified for the plaintiff
- Molly Morris v William Morris, Mary Morris, et al., 3/1/05, testified for the plaintiff

4

TESTIMONY AT TRIAL BY MARC A. FIRESTONE SINCE 1999

- People v Jordan    2/24/99    Los Angeles County Municipal Court, testified for the defendant
- People v Blyston    4/29/99    Los Angeles County Superior Court, testified for the defendant
- Medina v Valdivia, County of Ventura    5/5/99    Ventura County Superior Court, testified for the plaintiff
- Dalton v Parada Construction    7/24/00    Los Angeles County Superior Court, testified for the defendant
- People v Lopez    8/23/99    Los Angeles County Superior Court, testified for the defendant
- Sale v Feldman    9/28/99    Los Angeles County Superior Court, testified for the defendant
- Park v Sanchez    10/5/99    Los Angeles County Superior Court, testified for the defendant
- Garcia v Bennett    10/99    Los Angeles County Superior Court, testified for the defendant
- People v Brian Nevins    1/24/00    Ventura County Municipal Court, testified for the defendant in Preliminary Hearing
- People v Lisa Welchert    4/00    Los Angeles County Superior Court, testified for the defendant
- People v O'Neill    8/00    Los Angeles County Superior Court, testified for the defendant
- Welch v McCulloch    10/00    Ventura County Superior Court, testified for the plaintiff
- People v Sandoval    1/01    Los Angeles County Superior Court, testified for the defendant
- Laing v City of Pasadena    1/24/01    Los Angeles County Superior Court, testified for the plaintiff
- People v Randolph Allen    2/01    Los Angeles County Superior Court, testified for the defendant
- Burroughs v Landa    5/17/01    Ventura County Superior Court, testified for the plaintiff
- People v Alexander Sanchez    5/01    Los Angeles County Superior Court, testified for the defendant
- Mann v Winchester's Grill    10/01    Ventura County Small Claims Court, testified for the defendant
- Alverez v Hudson-General    6/7/01    Los Angeles County Superior Court, testified for the plaintiff
- People v Gonzales    1/02    Los Angeles County Superior Court Probation Hearing, testified for the defendant
- Verla Neel v Channel Harbor Foundation    3/7/02    Ventura County Superior Court, testified for the plaintiff

5

- People v Wallace Webb   5/02   Los Angeles County Superior Court, testified for the defendant
- People v Nelis Silcox   10/02   Los Angeles County Superior Court, testified for the defendant
- People v Gilbert Loya   2/3/03   Los Angeles County Superior Court, testified for the defendant
- People v Sean Graffam   3/11/03   Los Angeles County Superior Court – Beverly Hills, testified for the defendant
- People v Ernesto Hernandez Villalobos   4/10/03   Los Angeles County Superior Court, Alhambra, testified for the defendant
- People v Robert Chavez   4/18/03   Los Angeles County Superior Court, Criminal Courts Bldg., testified for the defendant
- Lustig v University Podiatry Group, et al.   4/23/03   Los Angeles County Superior Court - West District, Santa Monica, testified for the plaintiff
- Huertero v Wersching, Huntington Beach Police Department   5/14/03   U. S. District Court, Central District of California, Los Angeles; testified for the plaintiff
- People v Daniel Castillo   5/30/03   Los Angeles County Superior Court - Norwalk; testified for the defendant
- Ramos v Doud   6/13/03   Ventura County Superior Court, testified for the plaintiff
- People v Clarence Hughes   6/20/03   Los Angeles County Superior Court – LAX, testified for the defendant
- People v David Nava   6/24/03   Los Angeles County Superior Court – Central, testified for the defendant, Preliminary Hearing
- People v Vincent Sanchez   7/15/03   Ventura County Superior Court, testified for the defendant
- People v Daniel San Martin   8/11/03   Los Angeles County Superior Court – Citrus, testified for the defendant
- People v Henry Alvear   8/18/03   Los Angeles County Superior Court – Long Beach, testified for the defendant
- Schlag v Jack in the Box, Inc.   9/10/03   San Bernardino County Superior Court – Barstow, testified for the plaintiff
- People v Clarence Hughes   10/23/03   Los Angeles County Superior Court – LAX, testified for the defendant
- Martinez v Hagberg   10/30/03   Los Angeles County Superior Court – Central, testified for the respondent
- Grham v Pouliot, et al.   5/12/04   San Diego County Superior Court – Vista, testified for the plaintiff
- People v Oscar Blanco   7/22/04   Los Angeles County Superior Court- Long Beach, testified for the defendant
- People v Vicente Sanchez   9/23/04   Los Angeles County Superior Court- Pomona, testified for the defendant
- People v Michael Forouzan   11/9/04   Los Angeles County Superior Court- LAX Courthouse, testified for the defendant

6

- People v Carl Erickson    11/24/04    Ventura County Superior Court, testified for the defendant
- People v Jason Simpkins    7/27/05    Los Angeles County Superior Court, Juvenile Court – Sylmar, testified for the minor

7

## David Banes

**From:** David Banes [dbanes@saipan.com]
**Sent:** Monday, August 01, 2005 10:59 AM
**To:** dbanes@saipan.com

Thanks for asking me to help you with this case. As you requested, I have looked a the issue of the femoral fixation and whether that is the cause of "most" of Ms Santos' pain and suffering.

First of all, there are certainly questions as to why Dr Austin chose to rod Ms Santos femur with inadequate fixation on 1/31/04. While it may not be a clear case of malractice, it is not ideal practice. However, the fact that there was some fixation at the fx site after the first nailing was probably better for Ms Sanots overall health than being at bed rest right leg tibial pin skeletal traction for the one week it took to get a more appropriately sized rod. In this sense, perhaps the first rodding was a less uncomfortable and more mobile alternative.

The second rodding on 2/7 /04 did accomplish stable fixation and this ultimately resulted in a solid union of the fracture in very good position and alignment. I do not think the length of rod protruding from the proximal femur is ideal, but it is not excessive or below the standard of care either. Different surgeons leave differing amounts of nail protruding from the bone.

Now that Ms Santos has a solid union of her fracture, the IM rod can be removed in a very low risk proceedure and that should solve her buttock pain problems.

In conclusion, Ms Santos suffered a serious injury on 1/30/04. She underwent a first surgical proceedure with a less than optimally sized implant which did not fully stabalize her fracture, necessitating a second operation one week later with different sized hardware that did lead to a successful outcome. There is no doubt that the majority of Ms Santos pain and suffering were the result of her femoral fracture and the treatment required to support and transport her post injury as well as gain healing of the bone, not the short nail in the first instance or the somewhat prominent proximal aspect of the nail in the second. Had Ms Santos not fractured her femur, no transportation or surgical treatment would have been required.

I hope this is helpful.

JLC

Exh. "B"




## Commonwealth of the Northern Mariana Islands

### Hospital Division

GOVERNMENT OF THE NORTHERN MARIANA ISLANDS
DEPARTMENT OF PUBLIC HEALTH-ENVIRONMENTAL SERVICES

July 22, 2005

**MEDICAL REPORT**

Mr. David G. Banes
O'Connor Berman Dotts & Banes Attorneys-At-Law
Second Floor, Nauru Bldg.
P.O. Box 501969
Saipan, MP 96950-1969

Re      : **SANTOS, ELENITA**
DOB    : September 16, 1934
CHC#  : 91-20-37

Dear Mr. Banes:

What follows is a medical report on the condition and prognosis of Mrs. Santos. This interview was undertaken on the 22nd of July 2005 in my clinic in attendance with the patient, her husband, her son, and yourself.

I am a duly qualified medical practitioner with a practice confined to orthopedic surgery in the Commonwealth of the Northern Marianas Islands. I am under the employment of the Government of the Commonwealth of the Northern Mariana Islands at the Commonwealth Health Center. I obtained my MD from the University of Calgary in Canada in 1996. My residency training was undertaken at the University of Calgary in Canada finishing in 1996 with the award of Fellow of the Royal College of Surgeons of Canada.

**HISTORY:** This lady was 70 years old when she was involved in a fall while in the Island of Tinian. This occurred on the 30th of January 2004. She evidently slipped on a wet pavement at the Tinian Dynasty Hotel. She was transferred to Saipan with a diagnosis of a closed fracture of the lower one-third of her right femur bone. She did not have any other significant injuries at that time. She went to the operating room on the 31st of January where she had a closed intramedullary nailing of her right femur bone. Postoperatively, it was determined that the femoral nail selected for fixation of her fracture was of an inadequate length to properly fix this fracture. She had a second operation done on the 7th of February to do an exchange of femoral nailing to place down a longer nail. Her postoperative course was somewhat slow but she was eventually discharged back to Guam on the 2nd of March. I myself did not have any further contact with the patient. She rehabilitated slowly but well and was under the care of Dr. Nagarkatti in Guam. Evidently her fractures healed uneventfully but she still has complaints of pain in her right hip and her right thigh. She still requires use of either a walking stick or another person to help her in ambulating due to pain in her thigh. She has difficulty sleeping either on her right or left side because of pain in her right thigh.

-over-

---

P.O. BOX 500409 CK, SAIPAN, MP 96950
TELEPHONE: (670) 234-8950/51/52/53/54, TELEX 783-744 PHES SPN, FAX: (670) 234-8930

Exh. "C"

Page 2 (Medical Report)
RE: SANTOS, ELENITA        CHC# 91-20-37

She does not have any other significant complaints of pain elsewhere in her body.

Recent investigations, x-rays have revealed prominence of the femoral nail at the greater trochanter protruding proximally 2 cm. There is some small amount of heterotopic bone around the end of the femoral nail. Her fracture is well healed and there is no evidence of loosening of the nail or of any osteomyelitis.

**PROGNOSIS:** This lady's fracture, which occurred at 1½ years ago, is completely healed. Much of the pain, which she has, is as a result of the protrusion of the nail. This causes an irritation to her gluteal muscles and her abductor muscles around her hip, which will cause pain while walking or putting a pressure on that side. This can certainly affect the degree to which she ambulates and can diminish her sleep. Realistically, she should have an operation to have a removal of the femoral nail. Her fracture is healed and she does not require the nail and as it is the source of irritation she would greatly benefit by this. It is highly likely that once the nail is removed, her symptoms of pain will diminish significantly and she will have a much better quality of life.

The patient has some reservations about having the nail removed because of the concern over a lengthy postoperative course but this is unlikely and in fact without the nail being taken out, I would imagine that she will have continued pain and have a diminishment in the quality of her life.

**SUMMARY:** This 70-year-old woman had a fall approximately 18 months ago resulting in a closed fracture femur. No other significant injuries. She has had two operations to fix this fractured femur and this has healed uneventfully. However, she has symptoms as the result of the placement of the hardware which should be relieved with removal of the hardware. She has certain amount of muscle weakness because of the pain and a failure to be able to ambulate properly. This should also be relieved once she increases her mobility. She is somewhat anxious about both the original injury and the possibility of future surgery but it is clearly to her benefit to have such surgery for it will alter her situation to the benefit of herself.

I hope this information is of some value to you. If you require further information, please do not hesitate to contact me.

With kind regards.

Yours sincerely,

**THOMAS AUSTIN, M.D., FRCS (C)**
Orthopedic Service

TA:ngg d&t/22&23jul05